Petrone, Appellant, *v.* Moffat Coal Company.

Argued April 20, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph E. Gallagher,* with him *Ralph G. Mastriani,* and *O'Malley, Morgan, Bour & Gallagher,* for appellant.

*Charles J. Bufalino, Jr.,* Special Assistant Attorney General, with him *Clyde M. Hughes, Jr.,* Assistant Attorney General, and *William C. Sennett,* Attorney General, for Commonwealth, appellee.

*Thomas E. Roberts,* Chief Counsel, for State Workmen's Insurance Fund, appellee.

OPINION BY MR. JUSTICE MUSMANNO, September 26, 1967:

When Joseph P. Petrone was thirteen years of age, the economic straits of his family drove him into the anthracite mines of Lackawanna County. After toiling for thirty-three years in the depth of the earth, extracting one of nature's most useful minerals, Petrone found his strength ebbing, his step faltering, and his lungs clogging. He soon learned that he was doomed by the fate which has caught up with countless coal miners. Anthracosilicosis had taken up dread habitation in his chest. He could not work—his days as a coal miner were over. He filed a claim petition for benefits under The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, as amended, §301(e), 77 P.S. §1401(e). The workmen's compensation referee, to which the petition was assigned, concluded, after taking evidence, that Petrone was totally disabled, even though he was still in the summertime of his life. He was forty-six. The referee awarded him total com-

pensation. The Commonwealth appealed to the Workmen's Compensation Board and the board reversed the decision of the referee, stating that "Although the claimant is suffering from anthracosilicosis and associated emphysema, he is capable of doing light work of a general nature."

The claimant appealed to the court of common pleas and then the Superior Court, both of which affirmed the decision of the Workmen's Compensation Board. Petrone appealed to this Court for an allocatur which was granted.

The question to be decided here is whether a claimant for compensation is entitled to benefits under the heading of total disability if the only work he can perform is light work of a general nature, when no evidence has been presented that light work, considering the worker's physical disability, his limited education and vocational background, is available.

A Dr. Swartz testified for the Commonwealth that Petrone's physical condition was such that he could no longer work in the mines or compete in the general labor market, but that he could do light work of a general nature. To say that a man can do light work of a general nature is to indulge in language as loose as gravel on a hillside. To a husky longshoreman, lifting pianos might be light work; to a Milquetoast, pushing a wheelbarrow could be heavy work. Apparently Dr. Swartz realized the gelatinousness of his generalization so he probably attempted to give it some specificity by stating that the claimant could work as an elevator or as a power lawn mower operator. With these illustrations he went from the swamp of excessive generalization into the quagmire of misleading specifics. With the ever-continuing substitution of hand-operated elevators by automatic elevators, what assurance can there be that Petrone can ever get a job running an elevator? And how many electric or gaso-

8

line grass mowers are there in a mining community? Indeed, the writer of this opinion has seen many mining areas where there was no grass, much less power lawn mowers!

The Superior Court, in reviewing this case, generalized in much the same fashion as Dr. Swartz. It said: "However, where, as in the instant case, a claimant suffering from occupational disease is able to perform light work of a general nature, as distinguished from work of a specialized nature, continuously and steadily, it is presumed that such work is available and the claimant is not totally disabled within the meaning of the Act."

This is a strange presumption. How does the fact that a person is capable of performing light work guarantee that light work is available? We said in the case of *Phila. City Pass. Ry. Co. v. Henrice,* 92 Pa. 431, at 434: that "A presumption should always be based upon a fact, *and should be a reasonable and natural deduction from such fact.*" (emphasis supplied)

Suppose that the work the claimant is capable of performing is that of shoveling snow and he lives in Florida, or suppose he is capable of picking cotton and he lives in Maine? If the finding "capacity to perform light work" is to mean anything, there must be some evidence that light work exists. There was no evidence introduced at the hearing to show that Petrone could obtain work as an elevator or power lawn mower operator or, indeed any kind of light work. The record is as bare as the Sahara of trees that employers will hire men with the medical, educational and vocational background of Petrone. So far as the evidence reveals, Petrone is as economically totally disabled as if he had to live constantly in a wheel chair.

Total disability is a specific finding and not a general designation. Total disability refers and can only refer to individuals and not to masses or groups. A

college professor with rheumatism in his limbs might still be able to teach, a professional author with tuberculosis might still be able to write books, but a compulsorily retired coal miner who has no training for anything but coal mining is totally disabled when he has no aptitude for remunerative work other than the one which requires muscular exertion.

If Petrone cannot mine coal or perform work which raises his biceps or the muscles in his back, he is incapable of producing income; he is without earning power.

In *Woodward v. Pittsburgh Engineering & Construction Co.*, 293 Pa. 338, 340, we said: "The disability contemplated by the act is the loss, total or partial, of the earning power from the injury." In *Unora v. Glen Alden Coal Co.*, 377 Pa. 7, we said that in the interpretation of the Workmen's Compensation Act the word "disability" is to be equated with "loss of earning power." We explained: "A physician studying, on an anatomical chart, the malady of his patient in correlation to unaffected organs and members may well conclude that the subject is only partially disabled. That same doctor could, however, come to a different conclusion if he saw the patient in the depths of a coal mine laden with heavy equipment, bent under a low ceiling, coughing from bad ventilation and slipping from insecure footing. It is obvious that a one-legged man is only partially disabled at a desk addressing envelopes but entirely *hors de combat* in a quarry carrying blocks of stone.

"Thus, the determination of total disability is one which requires a consideration and weighing (in addition to the anatomical facts) of such factors as the claimant's mental outlook, his industrial background, his education, the occupation, if any, he could perform where his particular physical impairment would not be a total bar, and *whether such work exists*. Where

the injured person can handle only a specially-created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of everyday economics) the burden is on the defendant-employer to show that such a job is in fact within reach. If proof of that fact is not presented, the claimant then is entitled to a finding of total disability." (emphasis supplied)

The presumption spoken of by the Superior Court in the case at bar, namely, that if a person is capable of doing light work, light work can be had for the asking, is so unnatural and illogical that one wonders how it ever found a footing in the law. The fact that one is a swimmer does not legally or factually presume that there is available a river or even a swimming pool in the community in which he may swim. The original false step in the Superior Court's reasoning was apparently taken in the case of *Consona v. R. E. Coulborn & Company,* 104 Pa. Superior Ct. 170, 172 (1932) where the Court said, "If he were able, uninterruptedly, to do light work, it might be presumed that work of that nature would be available."

It would appear that the opinion writer in that case was led into this fallacious utterance by a statement in 33 A.L.R. 112, where the text writer was discussing something else, namely, the question as to who has the burden of proof to show that suitable employment is in fact available.

As illogical as was the original statement that if the person was capable of doing light work "it might be presumed" that the work would be available, the present statement of the Superior Court is even less rationally supportable. A wide ocean of non sequiturs separates *"might be* presumed" from "it *is* presumed". Presumptions are dangerous suppositions to begin with. Certainly one would presume, without being a weather expert, that May, the traditional month of flowers, is

a month of warm weather. Yet we know that May of 1967, with the exception of a rare day now and then, has flirted more with the shivering stragglers in the rear guard of winter than danced ahead casting blooms on the way to summertime.

It is a melancholy realization that if no one rises to contest a declared presumption, no matter how fallacious, the presumption will fatten until it becomes obese beyond all possibility of recognition. For instance, the Superior Court, as already indicated, stated in the case of *Consona* that when one is capable of doing light work, "it might be presumed that work of that nature would be available," but in *Harley v. Philadelphia & Reading Coal & Iron Company,* 144 Pa. Superior Ct. 301, 305 (1941). the Court went on to proclaim: "It is presumed that such work *is* available and that one *can procure it.*" (emphasis supplied)

A presumption of this character is like a false sign on the road which directs motorists over a cliff and, until the sign is torn down or changed, the cliff-tumbling continues. The time has come to change the sign on this phase of the law in workmen's compensation cases.

In the case at bar, for instance, it is opposed to all reason and demonstrated phenomena to assume that the claimant here can go out into the labor market and compete, even for light work, with men having no such serious ailments as the ones which afflict Petrone and who have not been confined to the darkness of the mines for thirty-three years. To say that an employer would take a seriously disabled person in preference to one who is without physical infirmity is to indulge in fantasy which has no place in the realism of the law.

In addition, the law does not require that the claimant must visit every building and house in his community to inquire if he is needed as an elevator opera-

tor or engineer on a power lawn mower. If light work is available, it is easier for the defendant to prove its existence than for the claimant to prove its non-existence. The Commonwealth in its brief practically conceded the correctness of this proposition when it said: "Thus an employee who is unable to do light work of a general character but only that of a selective nature, after being disabled by a disease compensable under the Occupational Disease Act, is entitled to compensation for total disability thereunder unless it appears that suitable work is available to such employee."

This same subject of available work was a matter for consideration in the administration of the Social Security Act, which provides that in order to be eligible for disability insurance benefits one must be unable to "engage in any substantial, gainful activity," 42 U.S.C. §§423(c) and 416(i). Interpreting this provision the United States District Court of the Eastern District of Pennsylvania said: "It is not enough to suggest that a man might sell candy in a candy store or operate an elevator or become a watchman and perform any one of the almost infinite number of light jobs that can be conjured up. There must be a realistic showing not only that the plaintiff could do these jobs but also that there existed a reasonable opportunity for the plaintiff to engage in substantial gainful employment." *Fedor v. Celebrezze,* 218 F. Supp. 667, 668 (D.C. Pa. 1963).

Apart from theory, speculation and academic discussion neither the court of common pleas nor the Superior Court said anything in this case about the lawn mowers and the elevators the claimant is supposed to operate. The jobs the Commonwealth offers the claimant on the basis of light work have no substantial existence in the realism of the substantial, workaday world.

The record is remanded to the court below for determination as to whether compensatory light work, in the sense indicated in the opinion, is available to the claimant, and for an order based on such factual finding.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur with the majority insofar as it overturns the rule that a disability claimant under the Act of June 21, 1939, P. L. 566, §301, as amended, 77 P.S. §1401 (Supp. 1966) found physically able to do light work of a general nature is presumed able to find such work. I am impelled to this conclusion by the view that the approach taken by federal decisions dealing with the analogous disability provisions of the Social Security Act is the one most consonant with justice and economic reality. Those cases adopt the rule that when a claimant is found physically capable of performing light work of a general character, the burden should be on the party from whom compensation is sought to show that such work is available to the claimant. *Baker v. Gardner,* 362 F. 2d 864 (3d Cir. 1966); *Hodgson v. Celebrezze,* 357 F. 2d 750, 755 (3d Cir. 1966) (and cases cited therein).

Of course, until now it has been settled law in the Superior Court that when a claimant is found to be physically capable of doing light work of a general character, such work is presumed to be available. *Sorby v. Three Rivers Motors,* 178 Pa. Superior Ct. 187, 114 A. 2d 347 (1955); *Hurtuk v. H. C. Frick Coke Co.,* 157 Pa. Superior Ct. 317, 43 A. 2d 559 (1945). Thus, it would have been unreasonable to expect the employer to have come forward with evidence of the availability of light work of a general character before the tribunals below. Hence, it is to give the employer the opportunity of meeting that burden that we remand.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I would affirm the decision of the Workmen's Compensation Board and of the Court of Common Pleas and of the Superior Court, all of which properly held that plaintiff (or any other person in the same situation) who can perform "light work of a general nature" is not entitled to *total* disability benefits, and there is no burden on the Board or the Court to prove that light work is available.