**ABEX CORPORATION, Employer-Appellant,**

v.

**Nolan W. BRINKLEY, Claimant-Appellee.**

Superior Court of Delaware.

New Castle.

April 3, 1969.

B. Wilson Redfearn, Wilmington, for employer-appellant.

John Biggs, III, Wilmington, for claimant-appellee.

OPINION

O'HORA, Judge.

The employer herein appeals from a decision of the Industrial Accident Board denying its petition to terminate temporary total disability payments to claimant Brinkley.

As grounds for terminating total disability payments employer alleged the availability of employment "commensurate with [claimant's] qualifications and training." Federal Bake Shop, Inc. v. Maczynski, 4 Storey 484, 180 A.2d 615 (Super.Ct. 1962).

No charge or improvement in claimant's physical condition [1] was alleged.

The employer admits that, having made payments for total disability, it had the burden of proving to the Board that claimant was no longer totally disabled. Ham v. Chrysler Corporation, 231 A.2d 258 (Del. 1967).

■ The function of this Court on such an appeal is to determine whether or not there was substantial evidence to support the findings of the Board. General Motors Corporation v. Huester, 242 A.2d 314 (Del.Super.Ct. 1968); M. A. Hartnett, Inc. v. Coleman, 226 A.2d 910 (Del. 1967).

■■ Total disability has been said to arise when an employee is "so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist". Hartnett v. Coleman (supra). The degree of compensable disability depends upon the degree of impairment of earning capacity. Ham v. Chrysler Corporation (supra). More specifically, in that regard, inability to secure work as a result of an injury is as important a factor as physical inability to perform work.

As witnesses before the Board the employer called, among others, several doctors and the deputy chief of the Delaware Employment Security Commission (Thatcher). The testimony of the doctors clearly established that claimant was physically capable of performing certain "light" work. The testimony of Thatcher established that such "light" work as claimant could physically perform was generally available at various times throughout the year in the Greater Wilmington area.

■ Common sense and everyday experience tells us that a person with given physical disabilities may be physically capable of performing certain "available" work, but because of his disability may be unacceptable to an employer and thus unable to secure such work. While the disabled person might be physically able to perform, an employer might well question his ability to perform efficiently and may feel unable to rely upon his continued health and ability to work steadily. Jobs must be realistically "within reach" of the disabled person. Unora v. Glen Alden Coal Co., 377 Pa. 7, 104 A.2d 104 (1954). It would indeed work a hardship on a disabled person if total disability benefits could be cut off any time an employer could merely show that jobs existed which claimant could physically perform and that openings in such jobs were generally available.

■■ A showing of physical ability to perform certain appropriate [2] jobs and general availability of such jobs is, in this Court's opinion, an insufficient showing of the availability of said jobs to a particular claimant and that a showing of this latter factor is necessary to satisfy the burden of proving that total disability has terminated.

The employer below failed to make a sufficient showing of availability of work to claimant for two reasons. First, the testimony of Thatcher was that a person finding it necessary to find light work "could probably" obtain jobs in the area of a stationary guard, a storekeeper, a tool clerk, or clerical type work. It is questionable whether "could probably" is a showing of availability of work to claimant sufficient to satisfy employer's burden of proof. The highly speculative nature of Thatcher's testimony is highlighted by the fact that it apparently was not based on any discussions with possible employers. Thatcher asserted that he was not testifying as an employer and, in fact, did not

---

1. Doctors testified that claimant had a lower lumbar back syndrome with 5–10% permanent disability and that heavy work, long standing, shoving, pushing and heavy lifting (30–50 lbs.) was to be avoided.

2. Fed. Bake Shop, Inc. v. Maczynski (supra).

know how an employer might react to claimant's situation.

■ Secondly, Thatcher's testimony does not appear to be based on consideration of all of the relevant factors. In Ham v. Chrysler Corporation (supra), the court stated that a determination of total disability requires consideration of such factors as the employee's age, education, and general background. The hypothetical question asked of Thatcher properly called upon him to consider claimant's age, education, and particular physical disability in assessing job opportunities for such an individual. However, Thatcher answered the question with reference to "a person finding it necessary to find light work". The answer indicates that the witness was thinking along general lines and did not consider this claimant's age, education, and particular physical disability. At the very least the testimony does not clearly indicate that Thatcher considered factors which are required to be taken into account in assessing total disability. For that reason the testimony fails to adequately support employer's contention that jobs were available to claimant and that total disability had therefor ceased.

The statement that work must be shown to be available to or within reach of a particular claimant finds support in the following language:

"It is not enough to suggest that a man might sell candy in a candy store or operate an elevator or become a watchman and perform any one of a number of light jobs that can be conjured up. There must be a realistic showing, not only that plaintiff could do these jobs but also that there existed a reasonable opportunity for the plaintiff to engage in substantial gainful employment." Fedor v. Celebrezze, 218 F.Supp. 667 (D.C.Pa.1963).

The fact that some willingness by employers to hire men with claimant's physical disabilities must be shown to prove availability of work is suggested by Pe-trone v. Moffat Coal Company, 427 Pa. 5, 233 A.2d 891 (1967).

It is true that in the *Petrone* case the only testimony bearing on job availability was by a doctor who testified that claimant could operate an elevator or a power lawn mower. No "expert" on employment opportunities was called and no attempt was made to show that jobs as elevator operators or power lawn mower operators were even generally available, let alone available to claimant. The *Petrone* decision, therefore, is based substantially on the fact that the very existence of performable jobs was not shown. The *Petrone* court indicated, however, that even if the existence of performable jobs were shown, some greater specificity would be required, when it said:

"The record is as bare as the Sahara of trees that employers will hire men with the medical, educational and vocational background of Petrone."

Counsel for the employer argues that the size of Wilmington precludes there being an expert who has great expertise in the field of job availability and further suggests that it is unjust to entitle a person to total disability payments "because there is not an expert in the Wilmington area who can testify that a particular job is available at a particular 'time'". The answer to counsel's argument is twofold. First, we have not said that an employer must show availability of a particular job at a particular time to satisfy its burden of proving termination of total disability. What has been said is that the burden is not met unless the testimony as to availability of appropriate work to claimant is more definite and concrete than was the case on the record below and is clearly based upon consideration of the relevant factors required to be taken into account in assessing total disability.

Secondly, there is the fact that defendant's position on this record is mere argument, unsupported by any evidence or testimony. Until such time as it can be shown

that the expertise that such an opinion would require either does not exist or would be an undue burden upon employers to obtain, it cannot be a sound basis for drawing the conclusion defendant urges.

The conclusions herein suggested should nevertheless be considered further in the light of a series of cases decided in Pennsylvania. The Pennsylvania rule, literally stated in these decisions, is that once claimant is shown to be capable of doing light work, it is presumed that such work is available  The rule seems to stem from a 1931 decision wherein it was said of claimant:

> "If he were able uninterruptedly, to do light work, it might be presumed that work of that nature would be available." Consona v. R. E. Coulborn & Company, 104 Pa.Super. 170, 158 A. 300 (1931).

The "rule" was further extended ten years later when the court said:

> "It is presumed that such work is available, and that one can procure it." Earley v. Philadelphia & Reading Coal & Iron Company, 144 Pa.Super. 301, 19 A.2d 615 (1941).

Taken literally the rule would require a finding of availability of work by the trier of fact whenever medical testimony established physical ability to perform certain work and claimant stood mute or offered evidence insufficient to rebut the presumption. The practical result of the rule would be to make more difficult the claimant's burden in seeking total disability benefits and lessen the employer's burden in seeking termination of such benefits.

The "presumption" was attacked as early as three years after its birth in Watkins v. Prudential Insurance Company, 315 Pa. 497, 173 A. 644, 95 A.L.R. 869 (1934) and has been subject to concentrated criticism and refinement in two recent cases. Petrone v. Moffat Coal Company (supra); Kirk v. L. Bauer, Jr., Inc., 209 Pa.Super. 357, 228 A.2d 228 (1967).

The presumption has been criticized for a number of reasons. It is quite a jump from "might be presumed" in the *Consona* case to "is presumed" in the *Earley* case and subsequent cases such as Sorby v. Three Rivers Motors, 178 Pa.Super. 187, 114 A.2d 347 (1955).

Furthermore, cases wherein the presumption has been applied have been those wherein the employee was seeking compensation and the ultimate burden of proving total disability was on him. The situation is quite different, however, in cases where the employer seeks to modify an award. The presumption in such circumstances would tend to unduly relieve the employer of, or assist him in, meeting his burden of proof. Kirk v. L. Bauer, Jr., Inc. (supra).

A final criticism of the Pennsylvania approach is that a presumption should always be based upon a fact and should be a reasonable and natural deduction from that fact. The inference that light work is available because the claimant is, or may be, capable of performing it does not have a sufficiently broad factual base to warrant its projection to the height of a presumption of law. How does the fact that a person is capable of performing light work guarantee that light work is available? Petrone v. Moffat Coal Company (supra).

Reexamination of the "presumption" has led to a return to the approach of the *Watkins* court. A more accurate statement of the Pennsylvania view would now seem to be that the so-called "presumption" is either a mere inference (a permissible consideration of the probability that light work is obtainable under the circumstances), or is a rule of proof production based upon the comparative availability of material evidence to the parties. Kirk v. L. Bauer, Jr., Inc. (supra).

In the *Kirk* case it was said that the presumption, at most, shifted to the claimant the burden of coming forward with evidence that suitable employment is unobtainable. The claimant did so and the

**556**

employer chose to rest and rely on the presumption. The court said that the employer had not satisfied its burden since, in effect, the "presumption" is not a presumption and will not supply the want of affirmative evidence.

The recent Delaware cases of Hartnett v. Coleman (supra), and Ham v. Chrysler Corporation (supra), which considered the burden of proof in proceedings for a change of disability status, placed the burden squarely on the employer, or the one seeking the change. They made no reference to the Pennsylvania "presumption" and it is assumed that the "presumption" is not currently a part of Delaware law. Whether the "presumption" should be a part of Delaware law in its present state as an inference or as a rule of proof production is another question. As an inference the rule suffers from some of the same deficiencies that it suffers from as a presumption, namely, that it does not necessarily or reasonably follow that light work is available from the mere fact that a claimant can physically perform it. As an inference, the rule would permit a finding of availability upon the mere showing of physical capability. Such a result appears unsound and undesirable.

As a rule of proof production, the "presumption" places some burden upon the employee who, as the party to whom evidence of job opportunities is probably most available, arguably should have such burden. On the other hand, it is always more difficult to prove or come forward with evidence of a negative proposition (i. e. unavailability of jobs). It seems reasonable to suggest, therefore, that a party resisting a petition for change of disability status should not be forced to come forward with evidence to support a negative proposition, particularly when to do so would be to relieve, to a great extent, the party having the ultimate burden of proof of that burden.

In short, there is no reason to adopt the Pennsylvania rule as an inference and only slight reason to adopt it as a rule of proof production. There are strong reasons against its adoption in either form.

Even if adopted in Delaware as a rule of proof production, the Pennsylvania "presumption" would make little difference in this case. Claimant Brinkley has come forward with evidence that he cannot obtain suitable work. His testimony that work was unavailable, coupled with the speculative nature of Thatcher's testimony was sufficient to rebut any inference that work was available which might arise if the Pennsylvania rule were adopted. Since Thatcher's testimony was rebutted by substantial evidence, the employer failed to meet its burden of proof and the Board decision was warranted.

Abex Corporation was obliged below to show the availability of appropriate employment to Brinkley. In the absence of such proof, the claimant's total disability must be deemed to continue. Since examination of the record below demonstrates that such proof was not made out, the Board's decision not to terminate total disability was warranted and should be affirmed.

It is so ordered.